JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:20-cv-10611-SB-AFM | Date: | March 9, 2022 |
|---|---|---|---|

| Title: | *Ed J. Hershewe v. JOYY Inc. et al.* |
|---|---|

| Present: The Honorable | **STANLEY BLUMENFELD, JR., U.S. District Judge** |
|---|---|

| Jennifer Graciano | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:   ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT [Dkt No. 64]**

   This putative securities class action, which is based largely on the allegations and conclusions in an anonymous report (the Report) published by the short seller Muddy Waters Capital LLC (Muddy Waters), asserts that the live video streaming platform YY Live—formerly owned by Defendant JOYY Inc. f/k/a/ YY Inc. (JOYY), a China-based technology company—is in fact a multibillion-dollar fraud that has almost no real users and inflates its revenue using bots.  The Court granted Defendants' motion to dismiss the first amended complaint (FAC).  Order, Dkt. No. 60.  Although the Court found the Report to be unreliable and insufficiently corroborated by other allegations in the FAC, the Court gave Plaintiffs leave to file a second amended complaint (SAC) "to rectify the defects" the Order identified in the FAC.  Order at 17.  Far from rectifying the FAC's defects, the SAC, Dkt. No. 61, adds only a few irrelevant facts and otherwise recycles the same insufficient allegations.  A significant portion of Plaintiffs' opposition brief is also a procedurally improper and substantively incorrect motion for reconsideration of the Court's previous Order.  For these reasons, as well

those set forth below, the Court **GRANTS** Defendants' motion and dismisses Plaintiffs' claims **with prejudice.**

## I.   BACKGROUND

The facts of this case are familiar to both parties and the Court.  *See* Order at 1-3.  Summarized briefly, on November 17, 2020, JOYY announced that Baidu, Inc. (Baidu) planned to acquire YY Live for $3.6 billion.  SAC ¶ 4.  The next day, Muddy Waters revealed a previously undisclosed short position in JOYY and released the Report, which accused YY Live of being a "multi-billion dollar fraud."  SAC Ex. A (Report) at 3, Dkt. No. 61-1.  The Report concluded that YY Live's "reported user metrics, revenues, and cash balances are predominantly fraudulent" because nearly all of YY Live's paying users were not real people but actually bots operating from YY's internal network.  *Id.* at 2.  This conclusion was based on Muddy Waters's purported discovery of Fake Users [FUs] that displayed YY Live's internal network IP address or its local host server IP:

> Internal Network FUs [Fake Users] are PUs [Paying Users] that display YY's internal network IP addresses, 100.64.0.0 ~ 100.64.0.10.  YY Server FUs, on the other hand, are PUs that carry the local host server IP, 127.0.0.1.  The IP addresses these FUs display can only come from inside YY.

*Id*. at 8.[1]

JOYY's American Depositary Receipts (ADRs) fell 26.4% after publication of the Report; two days later, Plaintiff Ed Hershewe filed a securities class action in this Court alleging violations of various securities laws against JOYY, JOYY's Chief Executive Officer (CEO) David Li, and two of JOYY's former Chief Financial Officers (CFO), Eric He and Bing Jin.  Dkt. No. 1.  On May 12, 2021, Lead Plaintiffs Gedion Demmissie and Suresh Goyal filed the FAC, which relied heavily on the Report's allegations and conclusions.  Dkt. No. 46.  On November 5, 2021, the Court dismissed the FAC but granted Plaintiffs 30 days to file an SAC that remedied its multiple defects.  *See* Order.  Plaintiffs timely filed the SAC.

---

[1] The Report is "incorporated by reference as Exhibit A" to the SAC.  SAC ¶ 182.  Courts can properly consider "documents incorporated into the complaint by reference" when ruling on a Rule 12(b)(6) motion to dismiss.  *Tellabs, Inc. v. Makor Issues & Rts., Ltd*., 551 U.S. 308, 322 (2007).

Dkt. No. 61. Defendants have moved to dismiss the SAC. Dkt. No. 64 (Mot.); *see also* Dkt. Nos. 65 (Opp.), 66 (Reply).

## II. **LEGAL STANDARD**

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition to these pleading standards, a plaintiff asserting a private securities fraud action must meet the heightened pleading requirements imposed by Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 (PSLRA), which "present no small hurdle for the securities fraud plaintiff." *In re Verifone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Similarly, the PSLRA requires that a securities plaintiff plead both falsity and scienter with particularity. 15 U.S.C. §§ 78u–4(b)(1)(B), (b)(2)(A).

## III. **DISCUSSION**

Plaintiffs bring claims under Securities and Exchange Commission (SEC) Rule 10b-5 and § 20(a) of the Securities Exchange Act of 1934 (the Exchange Act). SAC ¶¶ 230-245. To state a claim under Rule 10b-5, a plaintiff must plead: "(1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 613 (9th Cir. 2017). The Court dismissed the FAC because it failed to adequately allege the first two elements, and this motion also focuses on those elements.

### A. **Material Misrepresentation or Omission**

To plead falsity, Plaintiffs must specify with particularity "each statement alleged to have been misleading [and] the reason or reason why the statement is misleading." *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 877 (9th Cir. 2012). Just like the FAC, the SAC challenges dozens of Defendants' statements about JOYY's revenue, revenue growth, cash flow, users, user growth, and average

revenue per user, on the grounds that such statements were misleading because Defendants concealed "(1) [that] a material portion of users at any given time were bots; (2) [that] the Company utilized these bots to effect a roundtripping scheme that manufactured the false appearance of revenues; [and] (3) that as a result JOYY materially overstated its revenue, cash, performance and grow[th]." SAC ¶ 181. Accordingly, "the allegation that JOYY operated and controlled large numbers of bots as fake users (instead of real people) is the linchpin of Plaintiffs' entire complaint." Order at 5. In its prior Order, the Court determined that Plaintiffs failed to allege "particularized and legally sufficient facts showing that JOYY actually used bots," *id.*, and cited three reasons for this failure: (1) the anonymous short seller Report lacked the necessary indicia of reliability to form the basis of a securities fraud complaint, *id.* at 5-9; (2) Plaintiffs' confidential witnesses (CWs) failed to corroborate JOYY's alleged widespread use of bots, *id.* at 10-11; and (3) the opinions and research of Plaintiffs' expert, Dr. Craig Knoblock, similarly failed to validate the Report, *id.* at 11-12.

        1.       **The Report**

Plaintiffs devote over 20% of their opposition to challenging the Court's determination that the Report was not reliable. *See* Opp. § 1(a)-(d), at 10-16. Plaintiffs attempt to distinguish cases cited by the Court in its prior Order, continue to rely on cases the Court distinguished or found inapt, and rehash rejected arguments. Thus, over one-fifth of Plaintiffs' opposition is not actually an opposition at all, but rather an improper motion for reconsideration that does not comply with the procedural requirements of Local Rule 7-18. The Court granted Plaintiffs leave to file an SAC to rectify the factual defects in the FAC; it did not grant Plaintiffs leave to file a backdoor motion for reconsideration. The Court will not consider any of the arguments advanced by Plaintiffs in the above-cited sections. *See, e.g., In re Amaranth Nat. Gas Commodities Litig.*, 612 F. Supp. 2d 376, 393 (S.D.N.Y. 2009) (declining to consider securities plaintiffs' improper "re-argument" in an opposition to a motion to dismiss an amended complaint that was offered "[i]nstead of providing additional substantive allegations" as ordered by the court); *see also Diaz v. Vigil*, No. 1:03-cv-05108-OWW-NEW (DLB) PC, 2007 WL 954339, at *1 (E.D. Cal. Mar. 29, 2007) ("To the extent that the oppositions are construed to be motions for reconsideration, they are without merit.").[2]

---

[2] Plaintiffs' arguments are substantively meritless as well as procedurally deficient. The only new case cited by Plaintiffs in this section, *In re QuantumScape Sec. Class Action Litig.*, No. 3:21-cv-00058-WHO, 2022 WL 137729 (N.D. Cal. Jan. 14, 2022), demonstrates the Report's shortcomings. There, the court found that the

### 2. Confidential Witnesses

In rejecting Plaintiffs' reliance on the three CWs cited in the FAC, the Court found that the CWs were not described with "sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." Order at 10 (quoting *In re Daou Sys., Inc.*, 411 F.3d 1006, 1015 (9th Cir. 2005)). The Court also noted the fact that none of the CWs mentioned bots or fake gift transactions. *Id.* The SAC adds no new allegations about CW-2 or CW-3 and adds only one new sentence about CW-1, a former E-commerce brand manager at JOYY:

> CW-1's knowledge of JOYY's YY e-commerce live stream activities was obtained through exposure to such activities on the e-commerce platform merchants hosted and mainly through exposure in the operation management process of these merchants, as well as exposure to data generated from these livestreams, especially the content of livestream, length, and user number data.

SAC ¶ 92. This vague and conclusory assertion still fails to explain how an E-commerce brand manager would have any personal knowledge about JOYY's alleged deceptive use of bots posing as real users, nor does it even mention bots. Accordingly, the CW allegations in the SAC are inadequate to establish falsity. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009) (rejecting allegations that "fail[ed] to allege with particularity facts supporting its assumptions" that the CWs at issue were "in a position to be personally knowledgeable of the information alleged").

---

short seller report relied on by the plaintiffs in that case had the "minimum indicia of reliability" necessary for their claim to survive a motion to dismiss. *Id.* at *10. The report interviewed *nine* former employees about the defendant's testing of new battery technology, most of whom used to work in "research and development" and "claim[ed] to have personally encountered flaws in [the defendant's] testing." *Id.* at 9. The employees provided "overlapping and corroborative information," and their allegations were further validated by public information, interviews with four experts, and an earlier report by another financial news outlet. *Id.* at *9-10. None of these indicia is present here. *See* Order at 5-9.

### 3. Dr. Knoblock

In dismissing the FAC, the Court found that the "independent assessment" of YY Live gift transaction data conducted by Dr. Craig Knoblock failed to validate the Report's conclusions or establish that any of Defendants' statements were false when made. The Court stated:

> The AC does not establish the relevance of the "anomalies" purportedly uncovered by Knoblock. Plaintiffs do not allege that Knoblock—an alleged expert on bots and computer science—conducted an independent analysis and agreed with the Report's foundational allegation that most of JOYY's gift transactions were executed by bots because the IP addresses associated with those users "can only come" from JOYY's internal servers. In fact, Knoblock does not mention bots or servers at all. His observations about variability in the gift data do not, as Plaintiffs claim, suggest or even imply "revenue inflation" or "the utilization of bots posing as paying users." Thus, Knoblock's opinions do not show any of the challenged statements were false or misleading, nor does his research corroborate the Report in any way.

Order at 11 (citations omitted).

Plaintiffs' attempts to remedy these defects in the SAC do not succeed. Plaintiffs concede that the SAC merely rehashes the same variations in the gift data purportedly uncovered by Knoblock that the Court found unavailing. *See* Opp. at 3 n.2 ("The anomalies observed by Dr. Knoblock and alleged in the SAC mirror those alleged in the FAC[.]"). The only new "allegation" added by Plaintiffs to bolster Knoblock's claim that the "distribution of gifts [should] follow a normal distribution" is a citation to a study written in 1991 discussing patterns in American physical gift-giving to family and friends in the mid-1980s, which is obviously irrelevant to the issue of whether virtual gifts made on a Chinese social media platform in 2019 and 2020 were made by bots. SAC ¶ 77.

The new statements in the SAC that Knoblock "found . . . the [R]eport's data analysis and collection methodology to be sound" because "collecting data directly from a web site in real-time is a commonly used and generally accepted practice in the technology community" are too vague and generalized to be meaningful. SAC ¶¶ 68-69. Whether collecting real-time data from a website is a common practice in "the technology community" is not at issue in this case. Knoblock's broad claim

that he "agrees with the [R]eport's conclusions" and found them "reasonable" is similarly lacking. *Id.* ¶¶ 68, 71. Courts require more than such generic affirmations from experts to show falsity. *See, e.g.,* Koehler v. Litehouse, Inc., 2012 WL 6217635, at *2 (N.D. Cal. Dec. 13, 2012) (declining to consider "conclusory assertions" from an expert report that made "no statements of fact").

This lawsuit is almost entirely predicated on the Report's purported discovery of bots displaying IP addresses that "can only come from inside YY." Report at 7-8. The Report seems to allege two contradictory sets of internal IP addresses belonging to YY. *Compare id.* at 8-9 (alleging an eleven-address range of "100.64.0.0 ~ 100.64.0.10"), *with id.* at 69, Appendix C (alleging a range of over four million IP addresses, "100.64.0.0-100.127.255.255"). Tellingly, Knoblock—an alleged expert on bots and computer science—still declines to agree with the Report's allegation that either of these IP address ranges belongs to YY. Instead, Knoblock states only that "if" 127.0.0.1 "shows up in the log file," then it "had to have come from a local machine itself and not from an external server." SAC ¶ 71. This statement about *one* IP address in a range of over four million is not only conditional ("if"), but also contains vague and undefined terms ("log file" and "local machine") and does not even mention YY. Thus, far from showing that Knoblock agreed with the Report's conclusion about bots emanating from YY's internal servers after conducting a rigorous independent analysis, this statement suggests either that Knoblock did not actually analyze the Report ("*if* this IP address shows up in the log file . . .") or that he did but is still unwilling to stand behind its conclusion about internal servers. Either way, Knoblock again fails to corroborate the Report. Thus, his opinions do not establish falsity.[3] *See, e.g.,* Zakinov v. Ripple Labs, Inc., No. 18-CV-06753-PJH, 2020 WL 5877864, at *13 (N.D. Cal. Oct. 2, 2020) (holding that statements made "in the conditional tense" do not satisfy "Rule 9(b)'s falsity requirement").

Plaintiffs also attempt to buttress the Report's internal server allegation by citing to what they describe as "reputable publications." Opp. at 3. Specifically, Plaintiffs allege that "[i]n the case of 100.64.0.0/10 this would be a subnet that includes all network addresses from 100.64.0.0 to 100.127.255.255, which is a reserved shared address space used between a service provider and its subscribers." SAC ¶ 71 (citing "J. Weil; V. Kuarsingh; C. Donley; C. Liljenstolpe; M. Azinger

---

[3] Plaintiffs incorrectly assert in their opposition that Knoblock agreed with the Report's conclusion that certain IP addresses were internal to YY. *See* Opp. at 17-18. As the Court has explained, he did not do so.

(April 2012).  IANA-Reserved IPv4 Prefix for Shared Address Space. Internet Engineering Task Force (IETF). doi:10.17487/RFC6598.  ISSN 2070-1721.  BCP 153. RFC 6598").[4]  This allegation is vague and contains multiple nebulous terms that Plaintiffs do not define (e.g., "subnet" and "shared address space").  Moreover, Plaintiffs fail to explain why the publications are "reputable" and how they support the vague allegation.  Instead, Plaintiffs simply list two online articles[5] without explaining what they say, why they are reputable, or how specifically they support the Report's internal server allegation.

In summary, the SAC fails to rectify the defects in Dr. Knoblock's opinions, which still "do not show any of the challenged statements were false or misleading, nor . . . corroborate the Report in any way."  Order at 12.

### 4. Bigo and "China Credit Reports"

The FAC asserted two other bases for falsity:  (1) that JOYY's 2010 acquisition of Bigo was a scheme to enrich Li; and (2) an alleged discrepancy between revenues reported to Chinese State Administration for Industry and Commerce (SAIC) and the SEC.  The Court dismissed both.  Order at 12-13.  Because the SAC adds no new factual allegations to support either claim and Plaintiffs discuss neither in their opposition, Plaintiffs have conceded both claims.  *See, e.g.,* Conservation Force v. Salazar, 677 F. Supp. 2d 1203, 1211 (N.D. Cal. 2009) ("Where plaintiffs fail to provide a defense for a claim in opposition, the claim is deemed waived.").

---

[4] This allegation and citation appear to be taken verbatim from an authorless Wikipedia page entitled "Reserved IP addresses."  *See* https://en.wikipedia.org/wiki/Reserved_IP_addresses.  Wikipedia is not a "reputable publication" but rather "a suspect authority, unreliable, and has been treated as such by numerous courts."  Specter v. Texas Turbine Conversions, Inc., 505 F. Supp. 3d 936, 954 (D. Alaska 2020).

[5] Besides the J. Weil et al. article, the other citation is to "Justin Ellingwood, Understanding IP Addresses, Subnets, and CIDR Notation for Networking, DigitalOcean.com (Mar. 12, 2014), https://www.digitalocean.com/community/tutorials/understanding-ip-addressessubnets-and-cidr-notation-for-networking."  SAC ¶ 71.

### 5. Delayed Closing of the Baidu Transaction

The only new factual basis in the SAC purporting to show falsity is that Baidu's acquisition of YY Live had yet to be finalized as of December 2021. SAC ¶¶ 199-202. But a Reuters article cited by Plaintiffs in the SAC confirms that the delay in the acquisition's closing is due to concerns expressed by China's antitrust regulator. *See id.* ¶ 202 n.30.[6] While admitting that "news reports have speculated that the delay is due to regulatory issues," Plaintiffs assert, without any factual support, that "it is at least equally plausible that the delay is related to the Muddy Water[s] allegations." Opp. at 25. This speculative claim fails to plead falsity. *See Plevy v. Haggerty*, 38 F. Supp. 2d 816, 829 (C.D. Cal. 1998) (holding that "pure speculation and conjecture" are insufficient to establish falsity).

In summary, Plaintiffs have failed to meet the PSLRA's "exacting requirements for pleading 'falsity.'" *Metzler Inv. GMBH v. Corinthian Colls, Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008). As in the FAC, Plaintiffs' central allegations in the SAC—that most of the transactions on JOYY and Bigo were carried out by bots posing as real users and that JOYY and Bigo massively overstated their revenue as a result—are not pleaded with the requisite particularity to overcome a motion to dismiss. *See Rigel Pharm.*, 697 F.3d at 877. Thus, the SAC does not establish falsity.

### B. Scienter

As with falsity, the SAC fails to cure the FAC's defects in pleading scienter. Plaintiff must allege facts that give rise to a "strong inference" of scienter. *Metzler*, 540 F.3d at 1061. An inference of scienter is "strong" only if it is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. Scienter must be plead with particularity. *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 742 (9th Cir. 2008).

In dismissing the FAC, the Court rejected the following scienter theories as inadequate: (1) JOYY's alleged failure to refute the Report; (2) an agreement signed after the Report was released in which JOYY agreed to indemnify Baidu;

---

[6] Citing Julie Zhu, *Exclusive: China is unlikely to approve Baidu's $3.6 bln purchase of JOYY's YY Live – sources*, REUTERS, Sept. 24, 2021, https://www.reuters.com/world/china/exclusive-china-is-unlikely-approve-baidus-36-bln-purchase-joyys-yy-live-sources-2021-09-24.

(3) the core operations doctrine (where an event is so prominent that it would be absurd to suggest that key officers lacked knowledge of it); and (4) the corporate scienter doctrine. *See* Order at 14-17. Plaintiffs repeat each rejected theory in the SAC and again use their opposition brief as an improper motion for reconsideration.[7] These arguments fail to show scienter for the same reasons set forth in the Order. *See ScripsAmerica, Inc. v. Ironridge Global LLC*, 119 F. Supp. 3d 1213, 1265 (C.D. Cal. 2015) (dismissing with prejudice second amended complaint that relied "on the same inferences of scienter the court previously found insufficient").

The Court also rejected Plaintiffs' argument that Jin's resignation several months after the Report's publication raised a cogent inference of scienter. Order at 16. The SAC attempts to revive this argument by claiming that Jin failed to find employment after JOYY. SAC ¶¶ 11, 212-214. This claim, even if true,[8] is not substantial enough to raise the requisite inference. Nor is the alleged fact that JOYY has not replaced Jin since his resignation nine months ago. Plaintiffs argue that this violates the Sarbanes-Oxley (SOX) Act's "requirement that foreign issuers whose stock is traded on a U.S. Exchange have a principle [*sic*] financial officer to certify annual reports." SAC ¶ 213. But JOYY's next annual report is not due until April 2022, Mot. at 23; and in any event, "SOX [c]ertifications were not intended to create a per se violation of securities laws." *Wanca v. Super Micro Computer, Inc.*, No. 5:15-CV-04049-EJD, 2018 WL 3145649, at *6 (N.D. Cal. June 27, 2018); *see also Glazer Cap. Mgmt.*, 549 F.3d at 747 (holding that SOX certification is probative of scienter only if "the person signing the certification was severely reckless in certifying the accuracy" of the statements at issue "[b]ecause Congress expressed no intent to alter the pleading requirements of the PSLRA").

---

[7] The SAC's failure to state a claim is emphasized by the fact that even after the Court rejected the core operations and corporate scienter theories in part because Plaintiffs did not plead them in the FAC—instead raising them for the first time in their previous opposition—Plaintiffs did the exact same thing here. The Court admonishes Plaintiffs for their disregard of the Court's Order.

[8] The claim appears to be false, as Jin's move to a new company was widely reported in the financial media. *See* Bloomberg News, *Alibaba-Backed Edtech Startup Hires CFO Ahead of Likely U.S. IPO*, Yahoo! (Mar. 22, 2021), https://www.yahoo.com/now/alibaba-backed-edtech-startup-hires-061218014.html. *See* Mot. at 22.

The only new fact added to the SAC with possible relevance to scienter is that neither JOYY nor Baidu has reported YY Live's financial results since February 2021.⁹ SAC ¶¶ 7, 203-208; *see also* Opp. at 23 (asserting that "an entity worth supposedly over $3 billion . . . has simply disappeared from investor view!"). However, the SAC acknowledges that JOYY "ceased consolidation of YY Live business" following the announcement of YY Live's sale to Baidu. *Id.* ¶ 203. The SAC does not allege that this accounting decision (which would explain why JOYY ceased reporting YY Live's financials) was incorrect, and in fact concedes that JOYY reclassified YY Live as "discontinued operations." *Id.* In opposition, Plaintiffs claim that the absence of YY Live's financials from JOYY's financial statements after the Baidu deal was announced "seemingly contravenes" General Accepted Accounting Principles (GAAP). Opp. at 7. Defendants dispute this claim, *see* Reply at 11 n.4, but the Court need not wade into accounting minutiae because this argument was raised for the first time in opposition and the SAC makes no mention of GAAP violations. *See Schneider v. Cal. Dept. of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("The 'new' allegations contained in the inmates' opposition motion, however, are irrelevant for Rule 12(b)(6) purposes" because "a court may not look beyond the complaint."). And even if Plaintiffs' GAAP allegations were well pleaded—which they are not—they would still be insufficient to show scienter. *See Daou*, 411 F.3d at 1022 (stating that scienter usually "cannot be established by publishing inaccurate accounting figures, even when in violation of GAAP"); *see also In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994) ("[T]he mere . . . failure to follow GAAP, without more, does not establish scienter." (cleaned up)). Finally, Baidu is not a defendant in this action, and their post-Class Period accounting treatment of YY Live has no bearing on Defendants' consciousness of guilt.

Taken together, the SAC does "not plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999).

---

⁹ In their opposition, Plaintiffs advance a new theory of scienter, claiming that the SAC "alleges facts from which it can be inferred that JOYY was motivated to fraudulently inflate YY Live's revenues to make it an attractive acquisition candidate for Baidu." Opp. at 24. This argument fails. *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002) ("If scienter could be pleaded merely by alleging that officers and directors possess motive . . . to enhance a company's business prospects, 'virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions.'" (quoting *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir. 1995))).

\* \* \*

Plaintiffs have failed to establish either falsity or scienter. Thus, the Court **GRANTS** the motion to dismiss the § 10(b) and Rule 10b-5 claims. To prevail on their claims for violations of § 20(a), Plaintiffs must first allege a violation of § 10(b) or Rule 10b-5. *Lipton*, 284 F.3d at 1033 n.15. Plaintiffs have failed to do so. Accordingly, the Court **GRANTS** the motion to dismiss the § 20(a) claim against Defendants Li, Jen, and He.

C. <u>Leave to Amend</u>

In dismissing the FAC, the Court granted Plaintiffs leave to file an SAC "to rectify the defects" in the FAC as to falsity and scienter. Order at 17. On amendment, Plaintiffs have yet again failed to adequately plead either element, despite the fact that the Report was released over a year ago and Plaintiffs have had extensive time to attempt to corroborate the Report's conclusions. Moreover, the SAC is Plaintiffs' third complaint, and Defendants have already briefed two motions to dismiss. Accordingly, the Court concludes that granting leave to file another amended complaint would be "both futile and unduly prejudicial to Defendants." *McGovney v. Aerohive Networks*, Inc., No. 18-CV-00435-LHK, 2019 WL 8137143, at *13 (N.D. Cal. Aug. 7, 2019). Therefore, the Court grants Defendants' motion to dismiss with prejudice. *See, e.g., DSAM Glob. Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 391 (9th Cir. 2002).

IV. <u>CONCLUSION</u>

The Court hereby **GRANTS** Defendants' motion and dismisses Plaintiffs' Second Amended Complaint **WITH PREJUDICE.**